May I proceed? Good morning, Your Honors. How are you? Good. I imagine the question that we necessarily need to answer is, is rescission of an in absentia order a condition preceding to reopening, or can we consider a condition subsequent? I think that in looking at matter of MS, it becomes clear, at least in one camp, that the necessity of rescission may be obviated if an individual has the available relief that they are seeking by way of form of an application for adjustment of status under 245. This case has... Well, the implications of that are sort of, he says, run away, don't show up, and then you wait until you find somebody to marry, or whatever, some reason for an adjustment, and then you come back and say, okay, now I want my hearing six years later, and never mind about whether I had a good reason for not being there the first time. I mean, if you stay in this country long enough, something will come up that will give you a legitimate basis for adjustment of status. I just have difficulty with the notion that you can sort of run away and make no excuse for it at all. You know, not that you didn't get a notice, not that you were sick, or had an accident, or, you know, there are a limited number of legitimate excuses, or the mail got lost, you know, something of that sort. But none of these things are applicable to your client. He simply didn't show up. And then how many years later? Six years later? He says, now I'm married, now I want an adjustment. I think certainly we all agree that we cannot condone individuals to disobey the immigration laws and then attempt to reap a benefit by disobeying those laws. On the other hand, I think that there was a clear legislative intent when we had the enactment of laws that taking guidance from matter of MS, that notwithstanding that an individual may have not gone to court and received an order in absentia, that that individual could return if he or she now has available relief. Regardless of the reason he didn't show up the first time? We may not like it, but that's the law, so we need to follow it. Well, counsel, it seems to me that he has defrauded the INS by applying for relief under three different names. Would he be entitled to a visa because of his fraud? It seems to me he's not entitled to the ultimate relief, which you say he should be able to avail of. I think that it's necessary for us to draw a line of demarcation between what would be the statutory relief that would be available and whether that relief would be granted in the exercise of discretion. I think that the question we are confronted with is not necessarily coming to the end what our own decision or what this Court's decision would be as to whether we would grant that relief, but whether he has been given an opportunity to get to the starting line in front of the appropriate adjudicating body within the agency to determine if one, he's statutorily eligible, and two, whether that the officer or the special inquiry officer would then grant as a matter in the exercise of discretion. I think that we all are aware of countless cases of individuals, particularly those individuals that apply for relief under 208 for asylum. They may obtain documents to travel to this country fraudulently and may procure entry to this country fraudulently. That does not keep the Court from granting relief in the exercise of discretion based on their particular case. They may come in with multiple identities. I think that the facts in this case are not far afield from those set forth in matter of MS. In MS, though, you have a bit of a different situation. In MS, as far as I can read it, in addition, there was an application for adjustment of status with supporting documentation included with a motion to reopen. And here, as far as I can tell from looking at this record, correct me if I missed something, your client did not include an application for adjustment of status with his motion to reopen. I think that brings up a... Am I right, though, about that? I think the Court, based on what we have in front of us, is absolutely correct. What we have is an administrative record that's been provided to us. It contains the decision of the Board of Immigration Appeals disposing of the or denying the motion, but it in fact tells us that they've consolidated the record of proceeding. What is missing from this record now is the second, if you will, record of proceeding that does contain the application for adjustment of status, that does contain the requisite supporting documents. And in addition to that, since we know that this individual has three alien registration numbers, what we're going to find is that as early as 1995, he had initially filed with the Immigration Service a visa petition. That I think leads us to the second issue that we've raised now here, and that is, is there ineffective assistance of consul as well, which is a secondary issue. Around that he didn't know who this guy was and that he was using other aliases? Well, I think that we now are in a different arena, if you will, from where we were pre-September 11th and maybe even before 1990. I think that now it's incumbent upon all attorneys, particularly those handling immigration cases, to be on guard as just the way a criminal defense attorney would take on a case. So you're not supposed to trust your own client when your client says, my name is Joe Jones. You have to take fingerprints and send them to NCIC to find out if he is Joe Jones? Or else you're ineffective? I think that it may be prudent for any defense attorney to investigate the facts fully. And the amount of time that's consumed in having fingerprints done and sending those off with an $18 fee to the Bureau is probably less than 60 minutes. So certainly that information would be welcomed by any attorney practicing immigration law. Is there any rule anywhere that says that has to be done? And so how could this lawyer be ineffective for not finding out the real identity of this petitioner, who obviously lied to everybody? I think that the question that we would pose is, can you really do your job well as an attorney representing an immigrant to this country who is unfamiliar with the laws, who is not familiar with immigration law? So you're asking us to write an opinion saying that counsel is necessarily ineffective for failing to find out the true identity of his deceptive client? I think that we need an opinion that clarifies the standard that we're going to keep for all, for not just immigration attorneys, but for anyone representing someone before an agency. And in an agency that is relegated to forms, it's very important for anyone. So now we're opening a whole satellite litigation on the relationship between the attorney and the client. You get into privileges. I mean, what a mess. I think that certainly we are faced with that problem just as a practical matter on a day-to-day basis. We have individuals coming to us saying, I'm here with my United States citizen wife and I want to file a petition. I think it's incumbent upon that attorney to be able to do that. If they are not so costly to be able to conduct an investigation, the investigation, bureau investigation would yield for you the alien registration numbers. If this court had the complete record that was consolidated, this court would be able to view the fingerprint chart that was in fact taken by the Immigration Service and they themselves determined how many applications had been submitted by the agency. What would you do if you found out your client really wasn't your client and had been completely lied to you? Would you go ahead and file the petition anyway based on what the client told you? I think that then certainly you would have to make a decision. You would not go forward. You could tell your client, no, I'm not going to represent you. These are the problems that you have and you'd need to find representation elsewhere. So are you really doing your client a big favor by finding out this information? It's a bit like the criminal defense lawyer asking the client, gee, are you guilty? The lawyer says, yes, I'm guilty. That cuts off all sorts of avenues of defense. So I'm not convinced – I mean, I'm certainly not convinced it's required, but I'm not even convinced it's a good idea for counsel to do this kind of check. I think in this instance, Your Honor, if I may, in this instance, in 1995, seven, nearly eight years ago, in 1995, when Thomas Skolkin, I believe, when he filed his visa petition initially, it would have taken minimal amount of effort to have requested the agency file date of birth, the name, and even the fingerprint chart, or if that was sent out. That would have yielded for him an alien registration number. They could have sought that file. At that time, they could have then taken steps to consolidate the files. They could have said, look, this was done improperly when Mr. David Strand had the case and he went to the – thank you, Your Honor. Good morning. May it please the Court, Dan Goldman on behalf of the Respondent, Your Honor. How are you, Mr. Goldman? Very good, Your Honor. How are you today? Anything you heard this morning you think is not adequately responded to in your brief? No, Your Honor. I think we've responded to all those questions. Just to add, Your Honor, dealing with the ineffective assistance claim, just to note for this Court, that that claim was not properly raised below, and to raise that claim properly here, this Court does not have the jurisdiction to handle that, to address that claim, because the available administrative remedies were not exhausted. Other than that, Your Honor, as you asked, the government would rest on its brief. Thank you. Thank you, Your Honor.
judges: B.fletcher, Kozinski, Trott